John Joseph CAMILLO, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 39650.

Missouri Court of Appeals,
Western District.

July 19, 1988.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Aug. 30, 1988.

Application to Transfer Denied
Oct. 18, 1988.

Gregg T. Hyder, Columbia, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Appellant, John Joseph Camillo, appeals from the denial after an evidentiary hearing of his Rule 27.26 motion for post-conviction relief. We affirm.

Appellant was tried and convicted by a jury of two counts of arson in the second degree in violation of § 569.050, RSMo. He received consecutive terms of 10 years on each count. His appeal from that conviction was affirmed by this Court in *State v. Camillo*, 694 S.W.2d 517 (Mo.App.1985).

On October 28, 1985, appellant filed a motion to vacate sentence under Missouri Supreme Court Rule 27.26. On April 16, 1986, a supplemental motion was filed, and a hearing was held on that same day. On June 26, 1987, the court issued findings of fact and conclusions of law denying appellant's motion.

A brief statement of the facts from which these convictions arose is appropriate. The case involved two fires that were set at an unoccupied residence in Kahoka, Missouri. The first fire was reported at 6:20 a.m. on April 1, 1983. The second fire was reported at 3:50 a.m. on November 3, 1983. During this time, Kathy Jenkins owned and operated a tavern near the home that burned. The house was purchased for the parents of Kathy Jenkins and Kathy's name also appeared on the deed. In addition, she was serving as guardian for her father and as an attorney-in-fact for her mother.

The house was insured by All–State Insurance for $59,000.00. Following the death of her mother, the house became unoccupied and, in April of 1982, Kathy Jenkins entered into a real estate listing agreement to put the house on the market. The house was slow to sell and there were no prospective buyers at the time of the first fire. Although the first fire did considerable damage to portions of the interior, the house was saved. The insurance claim form was signed by Kathy Jenkins and she received the insurance proceeds from the loss. The insurance coverage on the house continued until November 6, 1983, three days subsequent to the second fire.

Appellant and Kathy Jenkins lived together for some time in 1978 and 1979 at a time when appellant was an escapee of the Missouri Penitentiary. One child was born of that relationship. Appellant was arrested in January of 1979 and returned to the penitentiary, where he remained until he was paroled in November of 1982. Following his release, appellant returned to the

Kahoka area where he was employed by Tom Shannon in the manufacture of wood pallets.

Both appellant and Jenkins were charged, in separate cases, with arson with respect to each fire. At appellant's trial, there was little doubt that the fires were intentionally set. The April 1st fire was set with the use of trailers such as ropes soaked in petroleum products, and it was the state's theory that a time delay device such a candle was used to ignite the trailers. There was no evidence of either trailers or time delay devices in connection with the November 3rd fire.

With the exception of admissions allegedly made by appellant to Rodney Laymon, the state had no direct evidence of appellant's responsibility for the fire. Circumstantial evidence against him included his relationship with Kathy Jenkins, and the fact that a car similar to appellant's was seen on the streets of Kahoka during the night of the second fire.

Appellant offered alibi defenses with respect to both fires. With respect to the first fire, his evidence was that he had left the Kahoka area around 10:30 p.m. on March 31st to drive to Delavan, Wisconsin, to spend the Easter holiday with his family. Appellant's daughter verified that she had breakfast with her father at 7:30 a.m. on April 1, 1983. With respect to the second fire, appellant could not recall the events of that night, but testified that he would have been home with Rae Jean Lewis, with whom he was living at the time.

The admissions of appellant to Rodney Laymon were crucial to the state's case. Laymon testified that in March of 1983 appellant approached him about burning the Jenkins house to collect insurance proceeds. According to Laymon, appellant stated that Kathy Jenkins had agreed to pay appellant $5,000.00 to burn the house and had advanced $800.00 of that sum. Laymon testified that appellant subsequently told him how the April 1st fire was set using ropes soaked in gasoline and a candle used as a timer. Laymon also testified that in August a meeting took place between Kathy Jenkins, appellant and Laymon at Kathy Jenkin's tavern to discuss the burning of the house and to plan the setting of the second fire.

The strategy of the defense was to rely on appellant's alibi and to cast doubt upon Laymon's testimony. Appellant's counsel extensively cross-examined Laymon and pointed out Laymon's previous criminal convictions. He further cast doubt upon Laymon's testimony by establishing that Laymon did not inform the authorities about the admissions allegedly made by appellant until January of 1984. Appellant's counsel pointed out that charges were pending against Laymon at that time (unrelated to appellant's case), and, therefore, Laymon's testimony was given in exchange for a promise of leniency by the state on Laymon's pending charges.

At a later point in the case, the state called Irvin Roberts as a witness who testified that he had befriended Rodney Laymon and that Laymon had in fact made previous statements to him concerning appellant's admissions. The substance of the admissions by appellant was substantially reiterated to the jury through Roberts' testimony.

The main thrust of appellant's 27.26 motion is that his trial attorneys failed to provide adequate representation in that they did not adequately present the evidence on appellant's alibi, and that they failed to exclude certain testimony by Robert Laymon and Irvin Roberts. Specifically, appellant claims that he was denied effective assistance of counsel due to: (a) counsel's failure to investigate and present witnesses and real evidence bearing on appellant's alibi; (b) counsel's failure to interview the state's key witness; (c) counsel's failure to object to inadmissible and prejudicial hearsay testimony; (d) counsel's failure to object to testimony concerning appellant's alleged "gangster reputation"; (e) counsel's failure to either request a mistrial or an instruction to disregard when a witness testified concerning appellant's alleged drug use; and (f) counsel's failure to pursue issues on appeal.

Appellant testified at the 27.26 hearing in support of his various allegations of

ineffective assistance. The state presented evidence from appellant's two trial attorneys, William Farrar and Wayne Fraser. On June 26, 1987, the Honorable Thomas J. Keedy issued findings of fact and conclusions of law denying appellant's request for relief. This appeal followed.

The standard for reviewing claims of ineffective assistance of counsel was set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which held: "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. A defendant must make both showings. *Id. See also Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979).

In his first point, appellant contends his attorneys were ineffective due to their failure to call Evelyn Shannon, Thomas Shannon, or Linda Shannon at trial. He further claims they were ineffective for their failure to produce Steven Summers, the owner of a sports car similar to his, and Rae Jean Lewis, appellant's girlfriend, at trial.

■■■ The presentation of evidence and selection of witnesses at trial are matters of trial strategy within the discretion of trial counsel. *State v. Turner*, 623 S.W.2d 4, 12 (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). To support a charge of ineffective assistance of counsel in failing to secure testimony of a defense witness, the defendant must show how the testimony of an alleged key witness would have helped him and what the testimony would have been. *Pelham v. State*, 713 S.W.2d 614, 617 (Mo. App.1986); *Pinkard v. State*, 694 S.W.2d 761, 762 (Mo.App.1985). Indeed, it must be shown that the evidence would have aided the movant's position. *Mullen v. State*, 638 S.W.2d 304, 305 (Mo.App.1982).

William Farrar, one of appellant's trial attorneys, testified that Evelyn Shannon was discussed many times before trial as a potential witness. He felt that in some respects she would have been a good defense witness; however, she was unable to

produce telephone records to substantiate the claimed telephone call of April 2, 1983. In addition, the testimony of the Shannons would have been largely redundant and inadmissible since they only would have testified as to appellant's statements that he *planned* to go to Wisconsin the week of April 1, 1983. Trial counsel did produce two witnesses, appellant's daughter and Todd Sublett, who *verified* appellant's trip to Wisconsin. As such, the decision not to call the Shannons appears to be one of trial strategy. An attorney's decision not to call witnesses does not demonstrate a lack of skill and competence where the witnesses' testimony would have been uncertain and inconclusive regarding an alibi. *Abrams v. State*, 698 S.W.2d 15, 17 (Mo.App.1985).

As to Steve Summers, appellant's own testimony at the 27.26 hearing established only that Summers had a car similar to his. He had no information that Summers' car was in the vicinity of the fires on the night in question. Since Summers was not produced, he also failed to show that he was available for trial. In *Fletcher v. State*, 710 S.W.2d 928, 930 (Mo.App.1986), petitioner claimed his counsel was ineffective for failing to present a possible explanation for the presence of his fingerprints inside a van. The court said the decision not to raise this "red herring" defense was a matter of trial strategy, not ineffective assistance. *Id.* The same applies here.

Finally, Wayne Fraser testified that Rae Jean Lewis was "a lousy witness ... She couldn't say much that was helpful...." If an attorney believes that the testimony of a witness would not be helpful to his client's position, it is a matter of trial strategy not to call him. *Laws v. State*, 708 S.W.2d 182, 187 (Mo.App.1986). Allegations of ineffective assistance relating to matters of trial strategy do not provide a basis for post-conviction relief. *Williamson v. State*, 628 S.W.2d 895, 898 (Mo.App. 1981).

Moreover, appellant's argument presents conjecture and speculation as to what these witnesses would have said and how they would have aided his position. Conjecture or speculation is not sufficient to establish

the required prejudice to a defendant who has claimed ineffective assistance of counsel due to counsel's failure to locate, interview and present trial witnesses. *Hogshooter v. State*, 681 S.W.2d 20, 21–22 (Mo. App.1984). This point is denied.

■ Rodney Laymon, the state's key witness, testified at trial that appellant had made certain statements to him detailing the manner in which appellant had set the fire in April. His testimony included information about rope trailers and candles used as time delay devices. Appellant contends that his attorneys made no attempt to interview Laymon prior to trial in order to ascertain his potential testimony. He claims that their failure to interview this witness impaired their ability to impeach his credibility because they were unprepared to rebut Laymon's testimony. We find no merit in this argument.

At appellant's 27.26 hearing, one of his trial attorneys, Wayne Fraser, acknowledged that he did not take Rodney Laymon's deposition before trial. He explained, however, that he had a preliminary hearing transcript of Laymon's testimony, tape recordings of at least two other hearings held in Clark County, and "other statements." He testified that, in his professional opinion, he had enough background information to impeach Laymon's testimony and prove to the jury that "Rodney Laymon was a pathological liar."

A movant for post-conviction relief who asserts ineffective assistance of counsel based upon inadequate investigation must show that fuller investigation would have uncovered evidence which would have improved his trial position. *Thomas v. State*, 665 S.W.2d 621, 624 (Mo.App.1983). In the present case, appellant has failed to establish that his attorneys' failure to depose Laymon hampered his defense in any way. The record shows that counsel was thoroughly familiar with what the content of Laymon's testimony would be. At trial, appellant's counsel conducted an extensive cross-examination of Laymon and, using the information he had acquired concerning Laymon's probable testimony, impeached

his testimony by discrediting Laymon as a liar.

■ Appellant further claims that reiteration of Rodney Laymon's out-of-court statements by Irvin Roberts' was clearly hearsay which would not have been admitted if defense counsel had timely objected. Appellant contends that this testimony was particularly damaging since the only competent evidence on the issue of his responsibility for the fire was Laymon's testimony that appellant admitted setting the first fire and also admitted planning to set the second fire.

As the trial record demonstrates, prior to Roberts' testimony, Rodney Laymon had testified at trial concerning the admissions purportedly made by appellant concerning his responsibility for setting the fires. Appellant's trial counsel extensively cross-examined Laymon and impeached him by attacking his credibility. The subsequent testimony by Roberts concerning Laymon's statements was admissible to rehabilitate Laymon's testimony by showing that Laymon had, in fact, made prior consistent statements, that Laymon had, in fact, made a statement concerning appellant's culpability prior to the state's plea bargain arrangement with Laymon, and to refute the inference that Laymon's testimony was fabricated in exchange for leniency on his pending criminal charges. Therefore, failure of counsel to object did not constitute ineffective assistance of counsel. At best, it was trial error.

■ A post-conviction motion to vacate sentence cannot be used as a substitute for a direct or second appeal, and mere trial errors cannot be raised on such a motion. *McCrary v. State*, 529 S.W.2d 467, 471 (Mo.App.1975). Where defense counsel's failure to object to testimony is at most trial error, the failure to object does not warrant post-conviction relief. *Gant v. State*, 577 S.W.2d 142, 143 (Mo.App.1979).

■ Appellant next contends that his trial counsel was ineffective for having failed to object to testimony by state's witness Rodney Laymon regarding appellant's alleged "gangster reputation" in prison,

and for having failed to request a mistrial or an instruction that the jury be admonished to disregard in response to Laymon's statement that appellant was "into drugs" while in prison. This assertion must be examined in the broader context of Laymon's testimony on redirect examination and recross-examination concerning his fear of appellant and reason for not coming forward sooner with his statement to Roberts. A portion of the testimony relevant to this discussion is a follows:

### REDIRECT BY MR. ACCURSO (Prosecutor)

Q. Who was the first person you told about this defendant's involvement in this crime?

A. Irvin Roberts.

Q. Why did you come forward with this information to Irvin Roberts?

A. He was kind of coaching me along plus I didn't want to be looking over my shoulder every time I turned around.

Q. What do you mean you didn't want to be looking over your shoulder?

A. Because I was being asked questions, you know, about it and I was denying it.

Q. Who was asking questions?

A. Irvin Roberts was.

Q. Asking a question about what?

A. About the fire.

Q. Who were you afraid of that you didn't want to be looking over your shoulder?

A. Joe Camillo.

Q. Why were you afraid of the defendant?

A. Because I know what he is capable of doing.

Q. What is he capable of doing?

MR. FRASER: I object to that as speculation, your Honor.

MR. ACCURSO: He has been asked and he made a big point about his being afraid.

COURT: Overruled.

Q. What is he capable of doing?

A. He's capable of doing just anything?

MR. FRASER: Object to the leading. He is obviously trying to pump this out of him.

COURT: Sustained.

Q. Such as? Give us an example that you know he is capable of doing? You had been in the penitentiary with him. Tell us about what Mr. Camillo is capable of?

A. Killing.

Q. Anything else?

A. That's the main reason.

Q. That's a pretty doggone good reason to be afraid of somebody, isn't it?

A. Yes.

MR. ACCURSO: No further questions.

\* \* \* \* \* \*

RECROSS EXAMINATION BY MR. FRASER (Defense Counsel):

Q. Are you basing that, Mr. Laymon, on his murder conviction? The fact that he was convicted of murder? Is that why you say he is capable of killing somebody?

A. Yes.

Q. That was in 1966, was it not?

A. Yes.

REDIRECT EXAMINATION BY MR. ACCURSO:

Q. What kind of reputation did he have in prison?

MR. FRASER: Object, no foundation.

Q. You were in prison with him, weren't you?

A. Yes.

Q. How many years?

A. Since '77 to '81.

Q. Did you know his reputation while he was in the Missouri State Penitentiary?

A. Yes.

Q. What was his reputation in the Missouri State Penitentiary?

A. He had a gangster reputation.

Q. A gangster reputation?

A. Yeah.

Q. What do you mean by 'gangster reputation?'

A. He was into drugs.

MR. FRASER: I object to this Your Honor.

COURT: Sustained.

MR. ACCURSO: No further questions.

\* \* \* \* \* \*

RECROSS EXAMINATION BY MR. FRASER:

Q. If he was a gangster weren't you a member of his gang?

A. Yes, I was.

MR. ACCURSO: That's all I have for this witness, Your Honor,

COURT: You may step down, sir.

Appellant argues that the testimony regarding his alleged "gangster reputation" was inadmissible and prejudicial, and that this was an attack on his character and his character was not in issue. He further argues that, had proper objection been made, it would have been error for the trial court to allow such testimony.

A review of the record of this case shows that Laymon's knowledge of appellant's reputation for violence became relevant with respect to whether or not Laymon had reason to fear him, thus explaining Laymon's hesitance to come forward with statements concerning appellant's admissions to him at an earlier date. As a result, a factual issue existed which created a legitimate basis for this reputation evidence. *State v. Moore*, 581 S.W.2d 873, 874 (Mo.App.1979). Consequently, trial counsel cannot be said to have been ineffective for failure to object.

With respect to the testimony about drugs, appellant's trial counsel objected to the testimony and that objection was sustained. Appellant contends that his trial counsel should have gone further and requested the court to declare a mistrial or instruct the jury to disregard the testimony. He claims that he "could very well have been convicted based on an alleged reputation and crime, entirely unrelated to the charges."

In order to prevail on a claim of ineffective assistance of counsel based on the failure to request a mistrial or an instruction to disregard, it must be shown that, had counsel requested the additional relief, there is a reasonable probability that the result of the trial would have been different. *See Strickland v. Washington, supra,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In the present case, several factors militate against such a conclusion. First, the remark concerning appellant's alleged drug use was indefinite as to specific acts. *See State v. Masterson,* 733 S.W.2d 40, 43 (Mo.App.1987). Second, no effort was made by the state to magnify or argue the remark. *See State v. Walker,* 531 S.W.2d 55, 57 (Mo.App.1975). Third, the court promptly sustained defense counsel's objection, thereby indicating its disapproval of that testimony. *See State v. Bundy,* 44 S.W.2d 121, 125 (Mo.1931). Fourth, in view of the other evidence of guilt presented, this isolated comment does not appear to have played a decisive role in the determination of guilt. *See State v. Hawkins,* 714 S.W.2d 673, 676 (Mo.App. 1986). Under these circumstances, the failure to request a mistrial or an instruction to disregard did not constitute ineffective assistance of counsel.

In his final point, appellant asserts that his trial attorneys were ineffective on appeal. They initially filed an appellate brief raising one point of error. At appellant's urging, a supplemental brief was filed which raised additional points. Several of the points raised in the motion for new trial were excluded, however, and appellant's conviction was affirmed *per curiam* in *State v. Camillo,* 694 S.W.2d 517 (Mo.App. 1985).

Appellant contends that his counsel's abandonment of issues that had been raised in the motion for new trial and a lack of substance in the amended brief resulted in trial errors that were not fairly presented to this Court.

 The general rule is that claims of ineffective appellate assistance are only cognizable in appellate court by a motion to recall the mandate. *Hemphill v. State,* 566 S.W.2d 200, 208 (Mo. banc 1978). Furthermore, there is no duty to raise every possible issue asserted in the motion for new trial on appeal. *Chastain v. State,* 688 S.W.2d 58, 61 (Mo.App.1985); *State v.*

**242**

*Johnson,* 672 S.W.2d 160, 164 (Mo.App. 1984). Finally, appellant must also demonstrate prejudice such that the omitted ground would have warranted reversal. *See, e.g. Parton v. Wyrick,* 704 F.2d 415, 416 (8th Cir.1983).

Counsel's "weeding out" of points raised in the motion for new trial does not amount to an abandonment of the appeal. Further, appellant did not establish that any of the omitted grounds would have warranted reversal.

■■■ An attorney is presumed to be competent in the manner in which he conducts pretrial preparation as well as in the tactics he employs during the trial. *Pickens v. State,* 549 S.W.2d 910, 912 (Mo.App. 1977), *Haynes v. State,* 534 S.W.2d 552, 554 (Mo.App.1976). The burden lies with the parties asserting that counsel was ineffective to prove it by a preponderance of the evidence. Rule 27.26(f); *McCrary v. State, supra,* 529 S.W.2d at 470. This burden is particularly onerous in this regard because of the wide latitude that is necessarily granted counsel in preparation for and conduct of trial. *See Stevens v. State,* 560 S.W.2d 599, 600 (Mo.App.1978); *Hall v. State,* 496 S.W.2d 300, 303 (Mo.App.1973). The burden to show ineffective assistance of counsel is, indeed, a "heavy" one. *Thomas v. State, supra* 665 S.W.2d at 624. Appellant has failed to meet his burden to show that counsel's performance prejudiced the results at trial.

The judgment of the trial court is affirmed.

All concur.