Jerome  MALLETT,
Respondent/cross-appellant,

v.

STATE  of  Missouri,
Appellant/cross-respondent.

No.  70923.

Supreme  Court  of  Missouri,
En  Banc.

April  18,  1989.
Rehearing  Denied  May  16,  1989.

William L. Webster, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for appellant/cross-respondent.

Donald L. Catlett, Public Defender, Jefferson City, for respondent/cross-appellant.

RENDLEN, Judge.

Movant was convicted of first degree murder for killing Missouri State Highway Patrolman James Froemsdorf and was sentenced to death in the Circuit Court of Schuyler County. His conviction and sentence were affirmed on direct appeal in *State v. Mallett*, 732 S.W.2d 527 (Mo. banc 1987), where the facts surrounding the crime are detailed. Movant subsequently instituted this Rule 27.26 proceeding, and, after two written amendments by movant's counsel, an evidentiary hearing was held before the Honorable Ronald M. Belt, who was assigned the case as Special Judge. Finding three of movant's claims meritorious, Judge Belt entered an order vacating movant's sentence and requiring that movant be "tried in a venue where there is a possibility of blacks being on the jury." The state appealed the vacation of the sentence and movant cross-appealed, contend-

ing the motion court erred in not granting relief on other grounds alleged in his motion. The Court of Appeals, Western District transferred the appeal prior to opinion in compliance with our policy concerning 27.26 proceedings where the underlying conviction resulted in imposition of the death penalty. We reverse.

■ The state asserts on appeal that the motion court erred in concluding movant's due process and equal protection rights were violated by the trial court's selection of Schuyler County as the venue for movant's trial and in holding that movant did not receive effective assistance of counsel because of counsel's failure to object to a mitigating circumstances instruction that contained an erroneously numbered reference to another instruction. In examining the contentions of error, we bear in mind that appellate review of the motion court's decision in a 27.26 proceeding is limited to a determination of whether its findings, conclusions and judgment are clearly erroneous. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987).

Initially we consider the questions raised concerning the trial court's transfer of venue to Schuyler County. Trooper Froemsdorf was murdered in Perry County, which is situated along the Mississippi River in Southeast Missouri, and movant was originally brought before the court in that county. Movant requested a change of venue, and after his counsel[1] and the state were unable to reach agreement on venue, each party suggested certain counties of their own preference to Judge Murphy during argument on defendant's motion. The state mentioned Texas, Phelps, Clay, and Clinton Counties, while defense counsel named St. Louis City and the Counties of St. Louis, Jackson, and Boone, then added Buchanan and Adair. Movant's counsel expressed a concern that venue be moved to a community where there was a possibility of blacks appearing on the jury because movant is black. After the discussion Judge Murphy stated that he had in mind a county not included on either list and "very far

and north of here." He subsequently entered an order transferring venue to Schuyler County, located along the Iowa border and containing, according to 1980 census statistics, 4964 white persons and three black persons. *See* U.S. Bureau of Census, Census of Population and Housing (1980). Judge Webber, who presided during the trial, testified at the 27.26 hearing he was not aware of any blacks living in Schuyler County at the time of movant's trial.

Movant asserted in his 27.26 motion that he was denied due process by the change of venue, and the motion court agreed, stating "an arbitrary choice of venue without giving the defense an opportunity to be heard; and the fact that the county chosen denies the movant of (sic) any opportunity of members of his own race being on the jury panel; and the fact that the case involves a black man killing a white trooper which has a high possibility for racial prejudice being a factor; violates the due process clause."

■ A fundamentally fair trial is the basic requirement of due process, and in most cases a showing of identifiable prejudice to the accused is necessary. *Estes v. State of Texas,* 381 U.S. 532, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543 (1965). It is also true that "at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process." *Id.; see also Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). However, in this case we believe the motion court clearly erred in concluding movant did not receive a fundamentally fair trial. The lack of potential black jurors and the issue of racial prejudice were discussed at length in our previous opinion on direct appeal of the conviction. In determining whether movant's death sentence was imposed under the influence of passion, prejudice, or the arbitrary factor of race, we stated that the voir dire examination provided "direct evidence that the jurors were not motivated by racism," and "[l]acking any other evidence, defendant urges that

---

1. Movant was represented at trial by Public Defenders Kenny Hulshof, Gary Robbins, and Mary-Louise Moran. We will refer simply to "counsel."

this Court assume racial bias because, while he is black and his victim was white, the county in which he was tried had no black residents, which resulted in a jury panel without blacks." *Mallett,* 732 S.W. 2d at 539. We declined "to infer racial prejudice on the part of a jury which sentences a black killer of a white victim to death simply because that jury was drawn from a county which has no black residents[,]" and noted "[t]o hold that racial prejudice may be inferred from the absence of members of the defendant's race on the jury would be, in practical effect, to hold that the defendant has a right to members of his own race on the jury. A defendant, however, has no right to a jury of any particular racial composition. *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975); *State v. Blair,* 638 S.W.2d 739, 753 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983)." *Id.* at 540. We further rejected an argument that the trial of a black in a county with no black residents inherently results in a jury motivated by prejudice. *Id.* The fact that the murder victim was white and defendant was tried in a county without blacks is insufficient to establish identifiable prejudice to the defendant, and we do not find the change of venue procedure utilized here created such a high probability of prejudice that it was inherently lacking in due process; indeed, as previously discussed, all the evidence, including the transcript of voir dire, indicates defendant received a fair trial by an impartial jury.

The third factor mentioned by the motion court was the purported lack of opportunity for the movant to be heard. We note in this regard that movant was able to, and did, express his venue preferences as well as his concern that there be potential black jurors. We see little significance in the fact there was no further hearing after venue was decided. The procedure here followed that specified in Rule 32.03. The motion court clearly erred in finding that movant was denied due process because the venue was changed to Schuyler County.

■ We next address the state's contention that the motion court erred in concluding movant was denied equal protection by the change of venue. To establish an equal protection violation, a defendant must prove the existence of purposeful discrimination and that the purposeful discrimination had a discriminatory effect on him. *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262 (1987). Assuming *arguendo* that a change of venue from a county with few blacks to one with none has a discriminatory effect on a defendant for purposes of equal protection analysis, we find a complete void of evidence that Judge Murphy's venue decision was animated by a discriminatory purpose. Movant has not shown that Judge Murphy treated him differently than white defendants or that Judge Murphy systematically used the change of venue procedures to ensure that black defendants would be tried by white juries. Nor is there evidence indicating Judge Murphy was aware of the racial composition of Schuyler County; however, if so, "discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). *See also McCleskey,* 107 S.Ct. at 1769; *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 1532, 84 L.Ed.2d 547 (1985).

The motion court relied on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in concluding "this court need not find that Judge Murphy acted with a discriminatory purpose, [however,] this court finds that an *inference* of discriminatory purpose exists." (Emphasis in original.) *Batson,* of course, involved the use of peremptory strikes by prosecutors to exclude blacks from serving on juries, and the Supreme Court held there that a defendant may make a prima facia case of discrimination by establishing: 1) he is a member of a cognizable racial group and the prosecutor has exercised peremptory

challenges to remove from the venire members of the defendant's race; 2) the practice in question permits "those who are of a mind to discriminate to discriminate," and 3) these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the jury on account of their race. *Id.* 106 S.Ct. at 1723. Once a prima facia case is established, the prosecution may come forward with a neutral explanation that rebuts the inference. *Id.* We find *Batson* of limited usefulness in analyzing movant's claim, which involves procedures for changing venue and has nothing to do with prosecutorial discretion or peremptory challenges.[2] As noted in *McCleskey,* 107 S.Ct. at 1767, jury selection is one of the "limited contexts" in which statistics have been accepted as proof of intent to discriminate. Of course, we need not decide whether statistical proof may be accepted in the context of change of venue procedures, for movant has presented none.

The "facts" upon which the motion court based its decision were stated as follows: "1) the case involves a cross-racial murder of a state trooper; 2) the decision of Judge Murphy was made without giving counsel an opportunity to object; 3) counties which were of equal convenience to witnesses; equally free of pre-trial publicity; of equal, greater or less distance; and included blacks were tendered by the defense and prosecution; 4) no specific or compelling reason existed to send the case to Schuyler County; 5) there were no blacks living in Schulyer County at the time of trial; 6) movant is a black man; 7) the defense expressed concern that the county chosen include blacks." These "facts" are wholly

inadequate under equal protection precedent to establish even an inference of discriminatory purpose when considered in the context of the "totality of relevant facts". *Batson,* 106 S.Ct. at 1721. As we stated in our previous opinion on direct appeal, "it can be assumed that venue was changed to Schuyler County in order to get the case moved as far north as possible to a county where reports of Trooper Froemsdorf's killing may have received less attention. There is not the slightest suggestion that race was a consideration in the decision to change the venue to Schuyler County." 732 S.W.2d at 540. Based upon the evidence adduced at the 27.26 hearing, we may now add that Judge Murphy selected a neutral site not suggested by either party. Movant's evidence falls short of the "exceptionally clear proof" required before it may be inferred that Judge Murphy abused his discretion, *McCleskey,* 107 S.Ct. at 1769, and the motion court clearly erred in concluding movant was denied equal protection.[3]

■ We next address the state's contention that the motion court erred in determining movant was denied effective assistance of counsel by counsel's failure to specifically object to an erroneous reference in Instruction No. 24 (MAI–Cr2d 13.44) to Instruction No. 21 (MAI–Cr2d 13.40) instead of Instruction No. 23 (MAI–Cr2d 13.42). MAI–Cr2d 13.44 submits mitigating circumstances to the jury and provides in part: "If you decide that one or more sufficient aggravating circumstances exist to warrant the imposition of death, as submitted in Instruction No. ——, you must then determine whether one or more mitigating circumstances exist which outweigh the ag-

2. The present claim, based upon a single action by the decisionmaker, would be more nearly analogous to a *Batson* claim involving the use of one peremptory strike by the prosecutor, a situation in which a *Batson* argument would be unlikely to prevail. But even in such a case the analogy is weakened by the fact the prosecutor as an advocate seeks all legitimate advantage for his cause, in contrast to the trial judge who in response to the defendant's motion for change of venue is not called upon to make a partisan determination and has no stake in the outcome.

3. Because we have determined that movant failed to make a prima facia case of purposeful

discrimination, we need not decide whether the affidavit of Judge Murphy, which the state sought to introduce after entry of the order vacating the sentence, may be considered. That affidavit is contained in the legal file at pages 69–72, and it not only corroborates the existence of the non-racial factors previously mentioned and apparent from the record, but indicates other legitimate considerations as well. Had movant established a prima facia case, Judge Murphy's affidavit would have been extremely forceful rebuttal evidence.

gravating circumstance or circumstances so found to exist." The blank is to be filled in with the number given to the instruction patterned after MAI–Cr2d 13.42, which instructs the jury on weighing both statutory and nonstatutory aggravating factors, *see* MAI–Cr2d 13.44 note on use 2; however, the trial court erroneously inserted the number of the instruction patterned after MAI–Cr2d 13.40, which submits statutory aggravating factors.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that he was thereby prejudiced. *Sanders*, 738 S.W.2d at 857 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In reviewing such claims, a court need not determine the performance component before examining for prejudice, and if it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so. *Id.* To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The motion court apparently found prejudice because "movant was deprived of the right to have the Supreme Court review the error[,]" noting, "This Court cannot speculate as to how the Missouri Supreme Court might have ruled the matter." We hold that the motion court clearly erred in determining that movant was prejudiced by counsel's failure to object to the instruction.

■ Movant argues that the erroneous reference in Instruction No. 24 prevented the jury from weighing the mitigating circumstances against the nonstatutory aggravating circumstances and that several of the mitigating circumstances were submitted to address specific nonstatutory aggravating circumstances. The question is what a *reasonable* juror could have understood the charge as meaning, and if the specific instruction fails constitutional muster we review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law. *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987). Movant's argument is untenable upon a reading of the instructions given the jury. Instruction No. 26 (MAI–Cr2d 13.46) informed the jury that: "You are not compelled to fix death as the punishment even if you do not find the existence of one or more mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances which you find to exist. You must consider all the circumstances in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you." If not already clear from Instruction 24, Instruction No. 26 informed the jury they could consider *all* the circumstances in assessing punishment. Certainly they were not precluded from considering any of the mitigating factors and balancing them against any of the aggravating factors. Furthermore, accepting for the sake of argument movant's contention that the jury would have construed the references in Instruction 24 to "aggravating circumstances" as applying only to statutory aggravating circumstances, the jury would then have believed they must return a verdict of life imprisonment if they found the mitigating circumstances outweighed the statutory aggravating circumstances, making the nonstatutory aggravating circumstances superfluous at that point in the deliberation. MAI–Cr2d 13.44. Such a reading would be beneficial, not prejudicial, to movant. Movant totally failed to establish a reasonable probability that, but for the failure to object, the outcome would have been different, and the motion court clearly erred in determining that he received ineffective assistance of counsel.

■ We now turn to the issues raised by movant in his cross-appeal. First, movant contends the motion court erred in concluding his claim of denial of due process in

connection with the trial judge's failure to recuse was not cognizable in this 27.26 proceeding because it was abandoned on direct appeal. Rule 27.26(b)(3). Alternatively, the motion court found that Judge Webber was not biased against movant. We believe the motion court did not clearly err in rejecting movant's claim. A proceeding under Rule 27.26 is not a substitute for appeal. *O'Neal v. State*, 486 S.W.2d 206, 207 (Mo.1972). "Trial errors cannot be brought within the scope of Rule 27.26 by simply alleging as a conclusion that they result in an unfair or impartial (sic) trial, or that they affected constitutional rights." *Id.* at 208. Although movant attempts to cloak his claim in constitutional attire, he alleges only that there was "an appearance of impropriety." Furthermore, the very issue movant now seeks to raise was presented in his motion for new trial. We find no clear error in the motion court's ruling on this point.

■ Movant also challenges the motion court's categorization of his claim concerning the trial court's failure to grant a change of venue from Schuyler County as trial error. Movant asserted he was denied his right to due process by the trial court's denial of his change of venue motion, which was filed on the first day of trial. The essence of movant's claim was addressed and rejected by this Court on direct appeal. *Mallett*, 732 S.W.2d at 539-40. "[A] matter decided on direct appeal may not be relitigated in post-conviction relief proceedings even if movant offers a different theory." *Schlup v. State*, 758 S.W.2d 715, 716 (Mo. banc 1988). The motion court did not clearly err in denying movant relief on this claim.

■ Movant further contends the motion court erred in ruling the statutory aggravating circumstance of "depravity of mind" was not unconstitutionally vague. On direct appeal we found sufficient evidence to support the jury's finding the murder outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind. *Mallett*, 732 S.W.2d at 542. The evidence indicated the victim had been subjected to serious physical abuse and that movant's actions were in callous disregard for the sanctity of human life. *State v. Griffin*, 756 S.W.2d 475, 489-90 (Mo. banc 1988). The motion court did not err in ruling the aggravating circumstance of "depravity of mind" was not unconstitutionally vague in this context. *Jones v. State*, 767 S.W.2d 41 at 45 (Mo. banc 1989).

■ Finally, we address the purported failure of the motion court to rule on movant's claim of ineffective appellate counsel in connection with counsel's decision not to advance his claim concerning the trial court's failure to strike venireman Karen Long for cause.[4] Although the motion court specifically mentioned the claim regarding juror Long, the ruling on that claim is not stated with particularity; however, we hold the findings and conclusions indicate the motion court's rejection of that claim and are sufficient for appellate review.[5] The standard for reviewing a claim of ineffective appellate counsel is essentially the same as that employed with trial counsel; movant is expected to show both a breach of duty and resulting prejudice. *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir.1987). There is "no duty to raise every possible issue asserted in the motion

**4.** It is of interest that movant and his trial counsel chose not to utilize a peremptory strike to remove Ms. Long from the jury.

**5.** Generally claims of ineffective assistance of appellate counsel are not cognizable in 27.26 proceedings, but are more appropriately presented to the appellate court in the form of a motion to recall mandate. *Hemphill v. State*, 566 S.W.2d 200, 207-8 (Mo. banc 1978). However, "where an appellate court retains no *unique knowledge* (emphasis in original) necessary to the disposition of a claim of ineffective assistance of appellate counsel or *where an evi-*dentiary hearing may be deemed necessary to the disposition (emphasis ours), a Rule 27.26 motion is the appropriate vehicle for seeking post-conviction relief." *Morris v. State*, 603 S.W.2d 938, 941 (Mo. banc 1980). Because movant's claim involves failure to brief certain issues on appeal, it would appear at first glance to be analogous to *Hemphill*. In the interest of judicial economy, and in view of the beneficial evidence presented at the motion hearing, we nonetheless undertake to examine the claim as if properly raised in this proceeding. *Buskuehl v. State*, 719 S.W.2d 504, 506 (Mo.App.1986).

for new trial on appeal[,]" *Camillo v. State,* 757 S.W.2d 234, 241 (Mo.App.1988), and the motion court noted that appellate counsel has no duty to present non-frivolous issues where appellate counsel strategically decides to "winnow out" arguments in favor of other arguments, citing *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983). The court stated: "In light of the fourteen issues presented by appellate counsel on direct appeal, this appears to be exactly what appellate counsel was doing." Despite counsel's decision to select and present the strongest contentions of error, the appellate brief submitted exceeded this Court's 100-page limitation, but was nonetheless accepted and considered. The motion court concluded with regard to the issues movant claimed should have been briefed, "counsel testified that she considered raising each one of them, but declined to do so. She considered those issues weaker than the issues she actually raised on direct appeal." We have examined the transcript of voir dire, as well as counsel's testimony at the 27.26 hearing, and find that appellate counsel did not breach her duty to movant.

For the reasons stated in this opinion, the motion court's order vacating movant's sentence is reversed and his 27.26 motion is overruled.

BILLINGS, C.J., HIGGINS, and COVINGTON, JJ., and MAUS, Special Judge, concur.

BLACKMAR, J., concurs in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

ROBERTSON, J., not sitting.

BLACKMAR, Judge, concurring.

I adhere to the views expressed in my dissenting opinion in *State v. Mallett,* 732 S.W.2d 527, 543 (Mo. banc 1987), and I agree with the conclusion of the court below that the case should have been sent elsewhere for trial when counsel advised the trial judge of the situation in Schuyler County.

The point about venue, however, was ruled adversely to the movant on the initial appeal and constitutes the law of the case, by which I am bound. I see no merit in any of the other grounds urged for upsetting the conviction, and so am obliged to concur in the judgment of reversal.

WELLIVER, Judge, dissenting.

I respectfully dissent, as I did in the original review of this case. *State v. Mallett,* 732 S.W.2d 527, 545 (Mo. banc 1982). I agree with the conclusion of the court below that the case should have been sent for trial elsewhere when trial counsel informed the trial judge of the situation in Schuyler County.