No. 89–5295. MALLETT v. MISSOURI. Sup. Ct. Mo. Certiorari denied. JUSTICE BLACKMUN dissents. 

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL J., dissenting), I would grant the petition for certiorari and vacate the death sentence in this case. Even if I did not hold this view, I would grant the petition to consider whether a trial court's decision to transfer a capital trial of an Afro-American defendant to a county with no residents of the defendant's race violates the Equal Protection Clause or the Sixth Amendment's fair cross section requirement, as applied to the States by the Fourteenth Amendment. Just as state prosecutors may not use peremptory challenges to exclude members of the defendant's race from the jury, *Batson* v. *Kentucky*, 476 U. S. 79 (1986), state trial courts may not transfer venue of the trial to accomplish the same result by another means.

Jerome Mallett, an Afro-American, was arrested for the murder of a white police officer that occurred in Perry County, Missouri. In 1980, over 1,100 Afro-Americans lived in Perry County, out of a total population of 16,784. Mallett was originally brought to trial in that county, but he requested a change of venue because of prejudicial pretrial publicity. Both the defense and prosecution offered suggestions for an appropriate venue; defense counsel specifically expressed concern that some members of Mallett's race reside in whatever county the court chose.

The judge ordered the case transferred to Schuyler County, a location that neither attorney had suggested. According to the 1980 census figures, Schuyler County contained 4,964 whites and 3 Afro-Americans; at the time of the trial, however, there were no Afro-Americans in the county. Mallett was convicted and sentenced to death by an all-white jury in Schuyler County. His conviction was upheld on direct appeal. In his petition for state post-conviction relief, Mallett argued that the Perry County judge's decision to transfer venue to Schuyler County violated his rights

under the Equal Protection and Due Process Clauses. After a hearing, a special judge ordered a new trial on both grounds; the State Supreme Court reversed his decision and affirmed the original sentence. 769 S. W. 2d 77 (1989) (en banc).

In *Batson* v. *Kentucky*, *supra*, at 86, we held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." To make out a prima facie case of purposeful discrimination, a defendant must establish first that he is a member of a cognizable racial group and that the state has acted to remove members of that race from the venire; second, that the procedure used by the state permits those "'who are of a mind to discriminate'" to do so; and third, that the facts and circumstances of the case raise the inference that the state acted in a discriminatory manner. 476 U. S., at 96. Once the defendant has established a prima facie case, the burden shifts to the state to present a neutral explanation to rebut the inference. *Id.*, at 97.

Properly applying *Batson* to these facts, the special judge found purposeful discrimination in the court's transfer decision. Specifically, he found that

> "'1) the case involves a cross-racial murder of a state trooper; 2) the decision of [the Perry County judge] was made without giving counsel an opportunity to object; 3) counties which were of equal convenience to witnesses; equally free of pretrial publicity; of equal, greater or less distance; and included blacks were tendered by the defense and prosecution; 4) no specific or compelling reason existed to send the case to Schuyler County; 5) there were no blacks living in Schuyler County at the time of trial; 6) movant is a black man; 7) the defense expressed concern that the county chosen include blacks.'" 769 S. W. 2d, at 81.

These facts give rise to a prima facie case of purposeful discrimination. The court's transfer decision reduced the number of Afro-Americans on Mallett's venire; the virtually unrestricted discretion of the trial judge to make the venue determination presented an opportunity to discriminate; and the judge transferred the case to a county with no members of Mallett's race. The trial judge failed to offer a "specific or compelling" neutral explanation for the transfer. *Ibid.*

In light of these circumstances, *Batson* requires an examination of the trial court's justification for transferring venue in a manner that discriminated against potential Afro-American jurors. In this case, the examination was conducted by a special judge in a postconviction hearing. I do not believe that such a hearing is necessary. A reviewing court can assess the record of the trial to determine whether the judge adequately explained his decision to transfer venue to a certain county. Such review is possible in this context because a judge's rationale is openly disclosed contemporaneously with his decision, unlike a prosecutor's rationale for his exercise of peremptory challenges. Here the special judge's finding that the transfer decision was racially motivated is amply supported by the record. Accordingly, Mallett's conviction and sentence must be reversed.

Mallett also argues that the transfer of his case to Schuyler County deprived him of due process, an argument the court below characterized as a challenge under the Sixth Amendment's fair cross section guarantee. 769 S. W. 2d, at 79–80. The fair cross section requirement has been applied to the States through the Due Process Clause of the Fourteenth Amendment. *Taylor* v. *Louisiana*, 419 U. S. 522, 526 (1975). Although a defendant has no right to a jury of any particular racial composition, we have long held that the State cannot act so as to deprive a defendant of his right to a venire that is "truly representative of the community." *Smith* v. *Texas*, 311 U. S. 128, 130 (1940). Mallett was originally brought to trial in a community with a significant Afro-American population and asked for his case to be transferred to a county with Afro-American residents. Yet the State chose Schuyler County as the location for the trial, a venue that included no members of Mallett's race. Although the jury pool may have been representative of Schuyler County, it was not representative of the community in which Mallett was charged, or even of the broader community comprised of the counties to which he sought transfer. In such a situation, determining which community defines the relevant universe for Sixth Amendment purposes is crucial to the adjudication of claims like Mallett's. I would grant the petition to resolve this issue as well.

The State's only response to both of Mallett's contentions is that they cannot be considered because a decision adopting either argument would create "new law" that would not be applicable retroactively in a state postconviction relief proceeding. As support,

it cites this Court's recent opinion in *Teague* v. *Lane*, 489 U. S. 288 (1989). The State argues further that this Court is precluded from even addressing the merits of Mallett's claims because, under *Teague*, retroactivity is a threshold matter. *Id.*, at 300–301. This response is unpersuasive. Mallett's equal protection argument is "dictated by precedent existing at the time the defendant's conviction became final." *Id.*, at 301 (emphasis omitted). The argument flows necessarily from the language in *Batson* stating that purposeful discrimination is impermissible in jury selection procedures. *Batson* v. *Kentucky*, 476 U. S., at 86–87. More importantly, it is not evident to me that *Teague* applies to our review of state postconviction proceedings in which the state courts have addressed the merits of the petitioner's claims. Certainly, the issue is one that merits review by this Court.

When it transferred this capital murder trial to a county with no inhabitants of Mallett's race, the trial court violated Jerome Mallett's fundamental equal protection rights. The transfer is particularly appalling because the defense counsel emphasized to the trial court that the venue should be one where members of Mallett's race resided, and because the judge could have selected other counties in Missouri that satisfied this valid concern. Accordingly, I dissent.