**John McELHENY, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

No. 26139.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 22, 2005.

Irene Karns, of Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

JAMES K. PREWITT, Judge.

John H. McElheny ("Movant") appeals the denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. Movant was convicted by a jury of second-degree murder and sentenced to a term of life imprisonment in 1997. On direct appeal, this court affirmed the conviction and sentence by per curiam order, and the mandate issued on August 31, 1998.

Movant timely filed a *pro se* Rule 29.15 motion and an *in forma pauperis* affidavit, alleging indigency. Movant's request for appointed counsel was denied, and a hearing date was set. However, Movant did not appear for that hearing, as he was

incarcerated and had not been appointed counsel, and the motion court found him in default and denied his motion. Movant contacted the State Public Defender's Office and the district defender entered his appearance on behalf of Movant. A Rule 75.01 motion was filed, which the motion court sustained, and Movant's post-conviction case was "reinstated." That ruling was subsequently set aside and Movant's Rule 29.15 motion was denied.

On appeal from the denial of his *pro se* motion, this court reversed the motion court's ruling and remanded for further proceedings to allow appellant to amend his motion. *McElheny v. State,* 29 S.W.3d 861 (Mo.App.2000). Counsel was appointed and an amended motion was filed alleging ineffective assistance of trial counsel. An evidentiary hearing was held on October 9, 2001. Movant's motion for post-conviction relief was denied on January 20, 2004. This appeal follows.

Movant contends, among other things, that the motion court failed to recognize Movant's claim that trial counsel was ineffective in that she failed to properly object to testimony that constituted evidence of an uncharged bad act. Movant further contends that had trial counsel made the appropriate objection, the trial court could have recognized that the testimony was not legally or logically relevant and, as such, was inadmissible.

■ Under Rule 29.15(k), our review of the denial of a post-conviction motion is limited to deciding whether the motion court's findings and conclusions are clearly erroneous. *Felder v. State,* 88 S.W.3d 909, 913 (Mo.App.2002). The findings and conclusions of a motion court are clearly erroneous only if, after a review of the entire record, we are left with a firm and definite impression that a mistake has been made. *Id.*

■ To be entitled to relief under a claim for ineffective assistance of counsel, a movant must establish that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and that counsel's deficient performance prejudiced the defense. *Id.* To demonstrate prejudice, a movant must "establish by a preponderance of the evidence that there is a reasonable probability that the result would have been different." *Jeremiah v. State,* 73 S.W.3d 857, 859 (Mo.App.2002). Movant is required to satisfy both prongs of the test, and should a movant fail to satisfy one, the court need not consider the other. *Perry v. State,* 11 S.W.3d 854, 862 (Mo.App.2000). There is a presumption that counsel's conduct was appropriate. *State v. Madewell,* 904 S.W.2d 66, 68 (Mo.App.1995).

At Movant's trial, evidence was presented that placed Movant and an acquaintance, Philip Buchanan, at a bar in Camden County on the night of December 2, 1995, where there was a shooting resulting in the death of Jerry Burns. Burns had been accompanied by others who were celebrating a birthday. At some point in the evening, a fight ensued, involving Movant and Buchanan against Burns and members from his group. There was testimony that there was an altercation between Jerry Burns and Movant during the brawl. Apparently, both Movant and Buchanan sustained injuries, and the two men left the bar together. Later that night, Movant and Buchanan returned to the bar, and Jerry Burns was fatally shot inside the bar. Movant was subsequently accused of killing Jerry Burns.

It was alleged at trial that Movant had been paying unwanted attention to one of the women with Jerry Burns and his group. Some witnesses stated that Movant was pointing and staring at the woman, and there was testimony that Jerry

Burns had approached Movant and asked him to stop. It was after Burns approached Movant that the fight broke out.

Deanna Shoemaker was called to testify for the prosecution. She was allegedly the woman receiving Movant's attention prior to the fight. She testified that when she was at the bar on the night prior to the shooting, she saw Movant and Buchanan there and spoke briefly to Movant when she went up to the bar to get a drink. The exchange between them was friendly; Movant told her she looked too young to be drinking, and she thanked him for the compliment. However, she was later approached by Kevin Williams, the disc jockey working at the bar that night, who related a conversation wherein Movant and Buchanan had stated to him that "they had a $5,000.00 hit on [her], that [she was] either going home with them or they were going to kill [her]." Deanna later told her husband what Williams had said, and when she saw Movant and Buchanan at the bar on December 2, 1995, she pointed them out to her husband, who in turn pointed them out to Jerry Burns.

Defense counsel for Movant objected to Deanna's testimony regarding what Kevin Williams had stated to her. The testimony and counsel's objection thereto are set forth below:

> Q [By prosecutor] In the course of the evening [December 1, 1995] did something else happen that involved this [Movant]?
>
> A [By Deanna Shoemaker] Yes, sir.
>
> Q Tell the jury what that was, please.
>
> A I saw Kevin Williams talking to [Movant] several times and then later on he came up to me and asked me if I was—
>
> [DEFENSE COUNSEL]: Objection. May we approach?

THE COURT: Approach.

[DEFENSE COUNSEL]: This clearly is trying to elicit a hearsay statement as to what Kevin Williams told her.

THE COURT: Wish to argue?

[PROSECUTOR]: It's not hearsay, not offered to prove the truth. If there ever was an admission under the res gestae this is it, on top of which she referred to it in opening statement.

[DEFENSE COUNSEL]: Don't believe I said anything about what Kevin Williams told her on Friday night. You did in your opening statement. I don't believe there's anything with res gestae.

[PROSECUTOR]: Goes directly to what happened the next night. It's not hearsay because its not offered to prove the truth of what was said.

[DEFENSE COUNSEL]: What is the purpose of the testimony then?

[PROSECUTOR]: What happened the next night.

THE COURT: Overrule the objection, she may finish.

(THE PROCEEDINGS RETURNED TO OPEN COURT)

(by [Prosecutor])

> Q Let's back up a little bit and tell the jury who Kevin Williams is.
>
> A He was the [disc jockey] at Sisters [Bar].
>
> Q And when you say the [disk jockey] are—where did he hang out at Sisters?
>
> . . . .
>
> A Like okay, this is where he was. He was in this area right here where the stage is.
>
> Q Have a seat back in the witness box. Now you were beginning to de-

scribe for the jury a conversation that you had with Kevin Williams later on the night of December the 1st?

A Yes, sir.

Q And would you go ahead and tell the jury what that conversation was?

A Yes, sir. He come up to me and asked me if I was scared or if something was wrong ... and I said no. And I asked why and he said, "Well, These two guys over here said that they had a $5,000.00 hit on you, that you were either going home with them or they were going to kill you."

Q And did he say anything else to you about that?

A And he also a little bit later, pulled, told me that Buchanan was sent down here to kill me from the city.

Q Did that make any sense at all to you?

A No, absolutely none.

In addressing Movant's contention that trial counsel was ineffective for failing to properly object that this testimony constituted evidence of an uncharged bad act, the motion court made the following finding:

> Movant has asserted that this testimony was inadmissible hearsay, but has offered no cogent argument in support of this assertion. Indeed, the testimony to which Movant objects is admissible on a variety of bases that need not be delineated here. The ruling of the trial court was correct. Even if it were not, however, Movant has failed to show the requisite prejudice occasioned by appellate counsel's failure to assert this error on appeal, particularly considering the overwhelming evidence of Movant's guilt presented to the jury at trial. In order to justify relief, Movant must show that he was prejudiced by his counsel's ineffective assistance to such an extent "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mallett v. State,* 769 S.W.2d 77 (Mo. banc 1989) at 82. This Movant has not done.

Here, we do not find the motion court's findings and conclusion regarding Movant's claim to be clearly erroneous. Movant had the burden to establish that there was a reasonable probability that the result in the criminal trial would have been different had the testimony not been allowed. The motion court determined that Movant failed to establish prejudice. Movant testified in his own behalf and admitted that, although he could not recall the shooting, he believed the shot that killed Jerry Burns came from him. The trial court's finding of no prejudice was not clearly erroneous. Movant's point is denied.

The motion court's judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.