**STATE of Minnesota, Respondent,**

v.

**Juan Falls LAVASTIDA, Appellant.**

**No. C5–84–1461.**

Court of Appeals of Minnesota.

April 30, 1985.

C. Paul Jones, Public Defender, Marilyn B. Knudsen, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Juan Falls Lavastida was convicted by a jury of terroristic threats, Minn. Stat. § 609.713 (1982). On appeal, he assigns numerous points of error including improper admission of *Spreigl* evidence, improper denial of a requested jury instruction, and denial of fair trial because two of his witnesses were not allowed to testify because an interpreter who knew a form of Cuban sign language was not located. We affirm.

## FACTS

Appellant is a deaf immigrant from Cuba. He married Janice Falls, who is not hearing impaired, in 1982. In November 1983, Falls secured an order for protection, restraining appellant from coming to her home and enjoining each not to harass or annoy the other.

On January 14, 1984, appellant waited in his car while he had a note sent to Falls that indicated appellant wanted to talk to her and that, if she didn't talk with appellant, he was going to kill her. Falls refused to talk with appellant and called the police. Later that evening, appellant came again to Falls' home and pounded on her door, but left before a police officer arrived. While the officer was at Falls' home writing a report, appellant reappeared, yelling and pounding on the door. Appellant was then escorted from the premises by the officer.

Falls then went to a bar. Appellant came over to her to ask why she called the police. Falls didn't want to talk to him and appellant slammed his fist on the table, took Falls' glasses off, twisted them, and hit her across the face. Appellant and Falls were pushed out of the bar after they were arguing and shouting at each other. Outside appellant attempted to hug Falls, but she pushed him away and hit him.

Falls attempted to get a ride home. While she was walking, appellant pulled up beside her and got out to ask her why she called the police. When she didn't answer, appellant took out a knife, lunged at Falls, and ran the blade's dull side across his

throat from ear to ear. He said in sign language that he was going to stab her. Appellant then put the knife away, but as Falls walked away he kicked her in the buttocks, causing a bruise.

Appellant was convicted of terroristic threats and was sentenced to one year and one day, concurrent with a 41-month prison sentence for aggravated robbery imposed at the same time.

## ISSUES

1. Did the trial court abuse its discretion in admitting two *Spreigl* incidents?

2. Did the trial court err in denying appellant's jury instruction?

3. Was the evidence of intent to terrorize sufficient?

4. Was appellant denied a fair trial because two witnesses were not allowed to testify because of the unavailability of an interpreter who knew a form of Cuban sign language?

5. Were the prosecutor's cross-examination of appellant and two witnesses and the closing argument improper?

## ANALYSIS

### I.

■ The State offered to introduce six prior *Spreigl* incidents. The trial court allowed two of the incidents, a gesture in a courtroom on April 16, 1984 when appellant pointed to Janice Falls and pulled his index finger across his throat, and an incident on January 19, 1984 in which he approached one James Fetsch and drew a knife across his own throat.

The two incidents were close in time and in modus operandi, and we do not believe the trial court abused its discretion in admitting this evidence. *State v. Filippi*, 335 N.W.2d 739, 743–44 (Minn.1983); *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967).

### II.

■ The trial court gave the following instruction:

Now, the statute I quoted to you in the Complaint reads as follows: "609.713, Terroristic Threats, Subd. 1. Whoever threatens to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly or facility of public transportation or otherwise to cause serious public inconvenience, or in a reckless disregard of the risk of causing such terror or inconvenience is guilty of terroristic threats."

I told you earlier on that the burden of the State is to prove certain things in this case and they are referred to as elements. In this case there are four essential elements which the State must prove beyond a reasonable doubt in order for you to find the defendant guilty. They are as follows: First, that the accused, Juan Falls Lavastida, made threats or a threat.

Secondly, his threat was a threat to commit a crime of violence.

Third, that the defendant did this with the intent to terrorize another, or in reckless disregard of the risk of terrorizing another.

Lastly, number four, that he did so on January 14, 1984, in Ramsey County, Minnesota.

Now, if the State proves each of these four elements beyond a reasonable doubt, the defendant is guilty. If you find that the State has failed to prove any of these four elements beyond a reasonable doubt, the defendant is not guilty.

A threat is a declaration of an intention to injure another or his property. The test of whether words or phrases are harmless is the context in which they are used.

The question is whether a communication in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor. So the question is: in the circumstances you have heard it described, would a communication, which you will determine is a threat or not, have a reasonable tendency to create great apprehension in the person to who it is directed.

The appellant requested the following instruction:

No comment in and of itself is a terroristic threat. A terroristic threat is not the kind of verbal threat which expresses transitory anger rather than settled purpose to carry out the threat or to terrorize the other person.

This instruction was denied. The instructions that were given on terroristic threats were taken from the Minnesota Supreme Court decision in *State v. Schweppe*, 306 Minn. 395, 398–400, 237 N.W.2d 609, 613–14 (1975), and were proper instructions.

### III.

■ There is no merit to appellant's contention that the evidence of intent to terrorize was insufficient.

### IV.

■ Appellant contends he was denied a fair trial because two friends were not allowed to testify. Juan Martinez and Maria Verdecia are deaf Cuban immigrants who cannot speak English, Spanish or American sign language. They only know a form of Cuban sign language.

Defense counsel made substantial attempts at procuring an interpreter who knew both American and Cuban sign language. None could be found. An experiment was attempted whereby one person translated the Cuban sign language to a second person who then communicated in American sign language to a third person who interpreted to defense counsel. This was found to be unsatisfactory. The trial court commended defense counsel for her efforts at locating an interpreter, but ruled that the testimony of Martinez and Verdecia was inadmissible. Defense counsel made no offer of proof on the testimony of these witnesses.

Appellant claims the State had a duty to find a suitable interpreter. Minn.Stat. § 611.30 (1982) provides that it is "the policy of this state that the constitutional rights of persons handicapped in communication cannot be fully protected unless qualified interpreters are available to assist

them in legal proceedings." Where, as here, there is no offer of proof indicating that the witnesses' testimony would be helpful to the accused and the State has not been complicit in not finding an interpreter, we do not believe the trial court erred in ruling the proposed testimony inadmissible.

### V.

1. We have examined the prosecutor's cross-examination of appellant and conclude that there was no improper reference to excluded prior conduct in that cross-examination.

 Questions by the prosecutor regarding appellant's prior threats toward Falls were proper, inasmuch as appellant had voluntarily proffered such evidence in earlier testimony. The prosecutor's question regarding a prior incident in which appellant carried a knife was proper impeachment of appellant's earlier testimony that he never carried a knife.

2. The prosecutor's cross-examination of a bailiff and appellant's friend which referred to appellant as being in custody was not so prejudicial as to require reversal here. *See, e.g., State v. Hudson,* 311 N.W.2d 505 (Minn.1981). The bailiff had testified on direct examination that he had not seen appellant's alleged April 16th threatening gesture in the courtroom. Upon further direct examination, he agreed that as part of his job he would watch appellant at the counsel table. Under these circumstances, the prosecutor's cross-examination reference to custody was not fatal.

Appellant's friend testified he'd not seen appellant since January 14. The prosecutor inquired if the friend had gone to jail to see appellant. The court allowed the question to stand. Under the circumstances, we find no error by the court.

3. The contention that the closing argument was improper is also without merit. In that argument, the prosecutor referred to the *Spreigl* evidence. It is apparent that in so doing, he was arguing the relevancy of this evidence and was focusing on appellant's state of mind on January 14, 1984. In considering the argument as a whole, it was not prejudicial and appellant was not denied a fair trial. *State v. Curtis,* 295 N.W.2d 253, 258 (Minn.1980), *State v. Booker,* 348 N.W.2d 753, 755 (Minn. 1984).

### DECISION

Appellant was not denied a fair trial. His conviction for terroristic threats is affirmed.

Affirmed.