# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-3786

_____

|  |  |  |
|---|---|---|
| Jerome Mallett, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Michael Bowersox, Superintendent of | * | |
| the Potosi Correctional Center, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 21, 1998
Filed: November 16, 1998

_____

Before BOWMAN, Chief Judge, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

BOWMAN, Chief Judge.

Jerome Mallett, a prisoner in the custody of the State of Missouri pursuant to a conviction of capital murder, appeals from a final judgment of the District Court[1]

_____

[1]The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

denying a writ of habeas corpus under 28 U.S.C. § 2254. See Mallett v. Delo,[2] No. 90-437 C (2) (E.D. Mo. July 29, 1996). We affirm.

I.

We begin with the facts of the crime for which Mallett was tried by a jury, convicted, and sentenced to death, the murder of Missouri state highway patrolman James M. Froemsdorf.

Shortly after 5:30 p.m., on March 2, 1985, Trooper Froemsdorf pulled over a rust-colored 1973 Ford LTD driven by Jerome Mallett. Mallett had been speeding on northbound Interstate 55 in Perry County. Before Trooper Froemsdorf approached the vehicle, Mallett hid his wallet and identification under the front seat. When Trooper Froemsdorf arrived at the side of the vehicle and requested Mallett's driver's license, Mallett replied that he did not have his license with him and falsely claimed to be Anthony Mallett, who is actually petitioner Jerome Mallett's brother. Trooper Froemsdorf handcuffed Mallett and searched the vehicle. He found several items bearing the name "Jerome Mallett," including a Texas driver's license.

Upon returning to his patrol car, Trooper Froemsdorf contacted the highway patrol radio dispatcher, who informed Trooper Froemsdorf that Mallett had four outstanding warrants for probation violations and one outstanding warrant for aggravated robbery. At 5:40 p.m., in what would prove to be his last radio transmission, Trooper Froemsdorf informed the dispatcher that Mallett was in custody

---

[2]While Mallett's habeas petition was pending with the District Court, Michael Bowersox replaced Paul Delo as the Superintendent of the Potosi Correctional Center, where Mallett was incarcerated. Pursuant to Federal Rule of Civil Procedure 25(d), the District Court substituted Bowersox for Delo as the named respondent, see Mallett v. Delo, No. 90-437 C (2) at 1 n.1, and the case comes to us with the above caption.

and that he needed no assistance. At approximately 6:00 p.m. a passing motorist noticed Trooper Froemsdorf's apparently abandoned patrol car and, upon closer investigation, discovered Trooper Froemsdorf's body.

The events occurring after Trooper Froemsdorf's final transmission and before the discovery of his body were deduced at trial, for the most part, from the injuries suffered by Trooper Froemsdorf and forensic analysis of the interior of the patrol car. Viewed in the light most favorable to the verdict, the evidence showed that after Trooper Froemsdorf led Mallett to the patrol car and placed him in the front passenger seat, he sat in the driver's side seat and began to write a speeding ticket. Trooper Froemsdorf's ticket book containing the partially written ticket later was found on the front passenger seat of the patrol car. Meanwhile, Mallett, aided by a childhood injury to his right thumb allowing him to compress his hand so that it was scarcely larger than the diameter of his wrist, managed to work his right hand out of the handcuffs in which Trooper Froemsdorf had placed him and attacked Trooper Froemsdorf with the back of his still-manacled left hand. When Mallett subsequently was captured, the handcuffs still dangled from his left hand. Upon freeing his right hand, Mallett repeatedly struck Trooper Froemsdorf on the left side of his face, leaving large bruises, numerous abrasions and a serrated cut under his left eye. The severity of the cut near Trooper Froemsdorf's eye suggested the blow would have temporarily blinded him. While Trooper Froemsdorf was unable to see, Mallett drew the trooper's .357 magnum service revolver from the holster on the trooper's right hip. The first shot fired by Mallett grazed Trooper Froemsdorf's right epaulet and shattered the driver's side window of the patrol car. The slug from the second shot, intended for Trooper Froemsdorf's lower left chest, was found imbedded in the trooper's bullet proof vest. The impact of the slug, as evidenced by the major abrasion left on Trooper Froemsdorf's chest, would have slammed Trooper Froemsdorf against the driver's side door and rendered him helpless for a short period of time. In this helpless state, Trooper Froemsdorf slumped backward against the driver's side door and away from the passenger seat, the position in which his body ultimately was found. At point-blank

-3-

range, as indicated by powder burns later found on Trooper Froemsdorf's body, Mallett fired two more shots into the right side of Trooper Froemsdorf's neck, killing him.

II.

We now proceed to the relevant procedural history of the case.

Mallett was charged in Perry County with the first-degree murder of Trooper Froemsdorf. Because of extensive pretrial publicity, defense counsel moved for a change of venue from Perry County to another county with a substantial number of black residents, making a jury that included black persons more likely. After defense counsel and the State were unable to reach agreement on venue, each party submitted a list of preferred counties. At the conclusion of argument on Mallett's motion, the Perry County court entered an order transferring venue to Schuyler County, a county in which there were no black residents. Neither party had included Schuyler County in its list of preferred counties.

A Schuyler County jury convicted Mallett of the first degree murder of Trooper Froemsdorf. As shown by the verdict form, the jury found three aggravating circumstances in assessing Mallett's sentence: (1) the murder involved depravity of mind and as a result it was outrageously or wantonly vile, horrible, or inhuman; (2) the murder was committed against a peace officer while engaged in the performance of his official duty; and (3) at the time of the murder Mallett had escaped from the lawful custody of a police officer. Based on these aggravating circumstances, the jury imposed the death sentence. On direct appeal, the Missouri Supreme Court affirmed Mallet's conviction and death sentence. See State v. Mallett, 732 S.W.2d 527 (Mo.), cert. denied, 484 U.S. 933 (1987).

Pursuant to Missouri Supreme Court Rule 27.26,[3] Mallet moved for post-conviction relief. Following an evidentiary hearing, the post-conviction court vacated Mallet's conviction and death sentence. On appeal, the Missouri Supreme Court reversed the post-conviction court's order and reinstated Mallett's conviction and death sentence. See Mallett v. State, 769 S.W.2d 77 (Mo. 1989), cert. denied, 494 U.S. 1009 (1990).

Mallett subsequently filed the present petition for a writ of habeas corpus in the United States District Court for the Eastern District of Missouri. The District Court denied habeas relief, and Mallett appeals.

III.

For reversal Mallett, a black man, argues the District Court erred in concluding: (1) Mallett's equal protection, due process, and Sixth Amendment rights were not violated when the state trial court transferred his case to a county in which no blacks resided;[4] (2) his constitutional rights were not violated when the jury considered "depravity of mind" as an aggravating circumstance in reaching its decision to impose the death penalty; (3) he was not deprived of his constitutional right to an impartial and disinterested trial judge; (4) his constitutional right to effective assistance of counsel was not violated either at trial or on direct appeal of his conviction and sentence; (5) he was not denied a fundamentally fair trial by the prosecutor's allegedly improper

---

[3]Missouri Supreme Court Rule 27.26 was repealed effective January 1, 1988, but was Mallett's appropriate recourse when he sought post-conviction relief.

[4]On direct appeal, the Missouri Supreme Court noted that according to 1980 census statistics Schuyler County had three black residents out of a total population of 4967. See State v. Mallett, 732 S.W.2d 527, 540 (Mo. 1987). Whether any black residents remained in Schuyler County in 1986, when Mallett's jury venire was drawn, is not indicated in the record.

closing argument; and (6) the evidence tending to establish the existence of deliberation, an essential element of first degree murder, was sufficient for a reasonable jury to convict. For the reasons discussed below, we affirm the judgment of the District Court.

We review de novo the District Court's legal conclusions and conclusions regarding mixed questions of law and fact. Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988), cert. denied, 490 U.S. 1040 (1989). The District Court's findings of fact are reviewable under the clearly erroneous standard. Id. at 1381-82.

A.

First, we address the question whether the change of venue from Perry County to Schuyler County was consistent with Mallett's Fourteenth Amendment equal protection and due process rights. We are unable to find any authority to support a conclusion that Mallett's Fourteenth Amendment rights were violated by a change of venue to a county without any, or at least a very small number of, black residents from which to draw a jury venire. See Epps v. State, 901 F.2d 1481, 1483 (8th Cir. 1990).

In Epps, a panel of this Court rejected a habeas claim nearly identical to the argument Mallett now makes. Epps, a black man, had been convicted of murder in an Iowa state court. Id. at 1482. Because of extensive pretrial publicity, defense counsel requested that venue be changed to another county with a black population. Instead, the state trial court changed venue to a county with no black residents,[5] in which Epps subsequently was tried and convicted of felony murder. Id. After unsuccessfully pursuing his state court remedies, Epps filed a pro se habeas petition in the United

---

[5]A later hearing on Epps' application for post-conviction relief revealed the county to which the trial court transferred venue had 11,114 residents, three of whom were black. See Epps, 901 F.2d at 1482 n.2.

States District Court for the Southern District of Iowa.  Id. at 1483.  The district court denied habeas relief, and Epps appealed to this Court.  Then, as now, we were unable to find a constitutional right requiring that the population of a county to which venue is transferred include a black segment from which a jury venire may be drawn.  Id.

Nonetheless, Mallett argues the Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986), prohibits, as a violation of the Equal Protection Clause of the Fourteenth Amendment, the transfer of a black defendant's criminal case to a county with no black residents.  We reject such a reading and hold that Batson is inapplicable to the present case.

In Batson, the petitioner claimed that the state prosecutor challenged potential jurors solely on account of their race and thereby violated the Fourteenth Amendment.  The Supreme Court held the Equal Protection Clause forbids a prosecutor to use his peremptory challenges to exclude veniremen based solely on their race.  See id. at 89.  Here, in contrast, Mallett challenges a change of venue occurring well before the process of choosing a jury had begun.  The trial court's decision to transfer venue on defense counsel's motion has nothing to do with prosecutorial discrimination in striking veniremen based on their race and was not addressed by the Court in Batson.

Further, the Batson Court rested its holding in part on the equal protection right of *jurors* to avoid exclusion from a petit jury solely because of their race.  "[B]y denying a person participation in jury service on account of his race, the State unconstitutionally discriminate[s] against the excluded juror."  Id. at 87.  In the present case, denial of participation on Mallett's jury could not have been on account of racial discrimination, for none of the potential jurors of Schuyler County (or at least a very small number of them) were black, and no black persons were members of the jury venire from which the trial jury was selected.

Finally, even were we to apply <u>Batson</u>, which we do not, Mallett would be required to make a showing of purposeful discrimination in order to establish an equal protection violation. See <u>id.</u> at 93 (citing <u>Whitus v. Georgia</u>, 385 U.S. 545, 550 (1967)). On appeal of Mallett's Rule 27.26 motion, the Missouri Supreme Court found "a complete void of evidence that [the transferring court's] venue decision was animated by a discriminatory purpose." <u>Mallett v. State</u>, 769 S.W.2d at 80. We are required by 28 U.S.C. § 2254(d)[6] to presume the correctness of the factual findings of the Missouri Supreme Court. See <u>Sumner v. Mata</u>, 449 U.S. 539 (1981); <u>Sloan v. Delo</u>, 54 F.3d 1371, 1383-84 (8th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1056 (1996). Thus, we hold Mallett's Fourteenth Amendment equal protection rights were not offended by the transfer of his case to Schuyler County.

B.

We also reject Mallett's argument that the change of venue procedure in this case was inherently lacking in due process.[7] Generally, a petitioner must show the actual existence of prejudice to prove he was denied the due process guarantee of a fundamentally fair trial. See <u>Irvin v. Dowd</u>, 366 U.S. 717, 723 (1961); <u>Hill v.</u>

---

[6]Section 2254(d) provides that in federal habeas corpus proceedings brought by a state prisoner, written factual findings by a state court of competent jurisdiction "shall be presumed correct," unless one of several enumerated conditions is met. 28 U.S.C. § 2254(d) (1994). None of the specified conditions exists here.

[7]Mallett's due process argument consists of a single sentence flatly asserting "[t]he circumstances underlying the change of venue also violate due process in that the procedure employed by the state involves such a probability that prejudice will result that it's deemed inherently lacking in due process." Brief for Appellant at 15-16 (citation omitted). Although we doubt a single sentence constitutes a sufficient exposition of the issue, see <u>Sidebottom v. Delo</u>, 46 F.3d 744, 750 (8th Cir.), <u>cert. denied</u>, 516 U.S. 849 (1995), we exercise our discretion to address the merits of Mallett's due process claim as we understand it.

Lockhart, 28 F.3d 832, 847 (8th Cir. 1994) (quoting Irvin, 366 U.S. at 724), cert. denied, 513 U.S. 1102 (1995). However, "at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process." Estes v. Texas, 381 U.S. 532, 542-43 (1965); United States v. Johnson, 892 F.2d 707, 711 n.1 (8th Cir. 1989) (Lay, C.J., concurring) (quoting Estes, 381 U.S. at 542-43). Mallett claims the change of venue in this case is the sort of procedure to which Estes lends itself.[8] From this premise, Mallett apparently argues that a high probability existed that the change of venue from Perry County to Schuyler County was the result of a transferring court motivated by racial prejudice or resulted in a jury prejudiced against him. As discussed supra, the Missouri Supreme Court found no evidence of racial motivation for the Perry County court's decision to transfer venue to Schuyler County, and we are bound by a presumption that those findings are valid. The presumption of validity likewise extends to the Missouri Supreme Court's determination, after extensive review of the voir dire record, that "direct evidence [existed] that the jurors were not motivated by racism." State v. Mallett, 732 S.W.2d at 539. Based on these facts, we are unable to conclude that Mallett has shown the identifiable prejudice generally required.

Further, we decline Mallett's invitation under Estes to infer prejudice solely from the circumstances that the transferring court transferred venue to a county with no black

_____

[8]We have noted previously that the Estes principle is rarely applicable and is reserved for extreme situations. See Snell v. Lockhart, 14 F.3d 1289, 1293 (8th Cir.), cert. denied, 513 U.S. 960 (1994) (citations omitted). Even in cases involving claims of prejudicial pretrial publicity, where Estes would appear to be most germane, we have been reluctant to conclude due process has been violated without demonstrated prejudice. See, e.g., Snell, 14 F.3d at 1294 (refusing to presume prejudice and requiring petitioner to show actual prejudice despite very thorough media coverage); Perry v. Lockhart, 871 F.2d 1384, 1390 (8th Cir.) ("Pretrial publicity can be the grounds for reversal only if it has actually prejudiced the jury."), cert. denied, 493 U.S. 959 (1989).

residents (or a very small number of black residents) and the jury ultimately was drawn from that county. To hold that prejudice may be inferred simply because the jury included no jurors of Mallett's race--the predictable consequence of drawing a jury from a county without a substantial black population--would amount to a holding that Mallett is entitled to have members of his race on the jury. Cf. Taylor v. Louisiana, 419 U.S. 522, 538 (1975) (holding defendants are not entitled to a jury of a particular racial composition). Therefore, we hold the change of venue procedure employed here did not deprive Mallett of the fundamentally fair trial he was due.

## C.

Next we consider the argument that the change of venue deprived Mallett of his Sixth Amendment right to a jury selected from a fair cross-section of the community. See id. at 530 (holding the Sixth Amendment, as applied against the states by the Fourteenth Amendment, confers on state criminal defendants the right to a jury venire drawn from a fair cross-section of the community). To establish a violation of this right, Mallett must show that blacks constitute a distinctive group in the community, the number of blacks in jury pools is unfairly and unreasonably small as compared to the number of blacks in the community, and this disproportionate representation is due to the systematic exclusion of blacks from the jury-selection process. See Wharton-el v. Nix, 38 F.3d 372, 376 (8th Cir. 1994) (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)), cert. denied, 513 U.S. 1162 (1995). Because Schuyler County contained no pool of black residents from which a jury could have been drawn, Mallett cannot establish even a single element necessary for his claim that the dearth of black jurors on his petit jury constituted a violation of his right to a jury drawn from a fair cross-section of the community. No authority exists for the proposition that the term "community," as used in the context of this Sixth Amendment claim, means any place other than Schuyler County, the county from which Mallett's venire ultimately was drawn. We therefore conclude the change of venue from Perry County to Schuyler County was consistent with the Sixth Amendment.

D.

We turn now to the question whether Mallett's constitutional rights were violated when the jury considered "depravity of mind" as an aggravating circumstance in imposing the death penalty.  The trial court instructed the jury that it could find an aggravating circumstance if "the  murder of James Froemsdorf involved depravity of mind, and that as a result thereof, it was outrageously or wantonly vile, horrible or . . . inhuman."  Trial Tr. at 2772-73.  According to Mallett, the trial court's depravity-of-mind instruction is unconstitutionally vague in violation of the Eighth Amendment as incorporated against the states by the Fourteenth Amendment.  We disagree.

The Eighth Amendment requires that state law define with reasonable specificity the circumstances in which the death penalty is to be imposed.  A state must articulate guidelines to provide a jury principled means to distinguish a case in which the death penalty is appropriate from those cases in which it is not.  Maynard v. Cartwright, 486 U.S. 356, 362-63 (1988); Godfrey v. Georgia, 446 U.S. 420, 427-28 (1980); Battle v. Delo, 19 F.3d 1547, 1562 (8th Cir. 1994), cert. denied, 517 U.S. 1235 (1996).  A limiting construction of the depravity-of-mind aggravating circumstance requiring a finding of "some kind of torture or serious physical abuse" is sufficient to channel and limit the jury's discretion in imposing the death sentence.  Maynard, 486 U.S. at 364-65; Battle, 19 F.3d at 1562; State v. Griffin, 756 S.W.2d 475, 490 (Mo. 1988) (holding murder involving "serious physical abuse" or "callous disregard for human life" justifies finding of depravity of mind), cert. denied, 490 U.S. 1113 (1989).  A state appellate court may provide such a limiting construction.  Walton v. Arizona, 497 U.S. 639, 653-54 (1990); Sloan, 54 F.3d at 1384-85 ("A state appellate court may cure an unconstitutionally vague instruction . . . by establishing and then later applying a valid limiting construction.").

In the present case, the Missouri Supreme Court, on direct appeal, found:

-11-

> The evidence that defendant repeatedly beat Trooper Froemsdorf across the face with his still handcuffed left hand, that defendant temporarily incapacitated the trooper by firing a shot into the trooper's bulletproof vest, and that defendant took advantage of this temporary incapacity by pumping not one, but two, .357 magnum slugs through the helpless trooper's neck, provided justification for the jury's finding that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind.

State v. Mallett, 732 S.W.2d at 542. Again, on appeal of Mallett's Rule 27.26 post-conviction claim, the Missouri Supreme Court revisited the circumstances of the murder and, addressing Mallett's argument that the depravity-of-mind aggravating circumstance was unconstitutionally vague, found "[t]he evidence indicated the victim had been subjected to serious physical abuse and that movant's actions were in callous disregard for the sanctity of human life." Mallett v. State, 769 S.W.2d at 83 (citing Griffin, 756 S.W.2d at 489-90, in which Missouri Supreme Court followed Godfrey and Maynard in explicitly narrowing depravity of mind aggravating circumstance). These findings amount to a limiting construction of the depravity-of-mind aggravating circumstance. See Smith v. Armontrout, 888 F.2d 530, 538 (8th Cir. 1989) (citing Maynard, 486 U.S. at 365).

In Mercer v. Armontrout, 864 F.2d 1429, 1435 (8th Cir. 1988), a case in which the Missouri Supreme Court made similar findings of fact effecting a limiting construction, a panel of this Court held the depravity-of-mind instruction was not unconstitutionally vague. Since deciding Mercer, this Court repeatedly has found the Missouri depravity-of-mind instruction, when narrowly construed, consistent with the Eighth Amendment. See, e.g., LaRette v. Delo, 44 F.3d 681, 686-87 (8th Cir.), cert. denied, 516 U.S. 894 (1995); Murray v. Delo, 34 F.3d 1367, 1382-83 (8th Cir. 1994), cert. denied, 515 U.S. 1136 (1995); Battle, 19 F.3d at 1562; Smith, 888 F.2d at 537-38. Cf. Newlon v. Armontrout, 885 F.2d 1328, 1333-35 (8th Cir. 1989) (finding depravity-of-mind instruction was not capable of objective determination by the jury and Missouri

Supreme Court did not provide limiting construction sufficient to satisfy Eighth Amendment), cert. denied, 497 U.S. 1038 (1990). Once again we conclude the depravity-of-mind aggravating circumstance, as here limited by the Missouri Supreme Court, does not violate the Eighth Amendment.

Even were we to determine that the depravity-of-mind instruction was unconstitutionally vague, the two remaining aggravating circumstances found by the jury would suffice to sustain Mallett's death sentence. In addition to concluding Mallett's actions involved depravity of mind, the jury found that the murder was committed against a peace officer while engaged in the performance of his duties and that Mallett had escaped the lawful custody of a peace officer at the time of the murder. "[U]nder Missouri law a death sentence need not be vacated if only one of several aggravating circumstances is later found to be deficient." Harper v. Grammer, 895 F.2d 473, 480 (8th Cir. 1990) (citing Mercer, 864 F.2d at 1435-36 n.5).

Mallett argues the jury's consideration of an invalid aggravating circumstance cannot be cured by the existence of additional aggravating circumstances. This is so, he claims, because Missouri is a "weighing" state--a state in which a jury must weigh the aggravating circumstances against the mitigating circumstances in determining whether to impose the death sentence. Upon invalidation of one of several aggravating circumstances, Mallett's argument goes, the remaining aggravating circumstances must be reweighed against the mitigating circumstances. This simply is incorrect. "[T]he sentencing process in Missouri does not involve a simple weighing of aggravating and mitigating circumstances. Once a single aggravating circumstance is found in Missouri, the factfinder is free to consider all the evidence to determine whether the death penalty is appropriate." Sloan, 54 F.3d at 1385 (citations omitted); see also Feltrop, 46 F.3d at 771 ("Missouri is not a weighing State."); State v. Mercer, 618 S.W.2d 1, 10 n.5 (Mo.), cert. denied, 454 U.S. 933 (1981). Thus, in the case at bar, even if the depravity-of-mind instruction were unconstitutionally vague (we already have determined it is not), the two remaining aggravating circumstances found by the jury would be sufficient to

sustain Mallett's death sentence. For all of these reasons, the depravity-of-mind aggravating circumstance does not support a reversal of Mallett's sentence.

## E.

We consider next Mallett's argument that he was denied his Fourteenth Amendment due process right to an impartial and disinterested judge. Prior to being assigned to Mallett's case, the state trial court judge sent two plaques to the state highway patrol in memory of Trooper Froemsdorf and another patrolman killed in the line of duty. One plaque was forwarded to the family of Trooper Froemsdorf. Based on these facts, Mallett moved for recusal of the trial court judge before trial. His motion was denied. Mallett raised this issue again in his motion for new trial, but failed to address the issue on direct appeal. He attempted to resurrect the argument in his Rule 27.26 motion, but the motion court determined the issue was not cognizable because it was not raised on direct appeal. See O'Neal v. State, 486 S.W.2d 206, 207 (Mo. 1972) ("A proceeding under Rule 27.26 is not a substitute for appeal."). The Missouri Supreme Court affirmed the motion court's finding that the claim was abandoned. See Mallett v. State, 769 S.W.2d at 83. Because this issue is procedurally defaulted under Missouri law, and because Mallett makes no showing of cause and prejudice to overcome the resulting procedural bar against federal collateral review of the issue, we necessarily find that federal habeas review is procedurally barred. See Harris v. Reed, 489 U.S. 255 (1989); LaRette, 44 F.3d at 687.

## F.

We have considered Mallett's remaining claims regarding ineffective assistance of trial and appellate counsel, the State's allegedly improper closing argument, and the sufficiency of the evidence regarding the element of deliberation, and conclude that none of them has merit. The judgment of the District Court is affirmed.

-14-

A true copy.

Attest:

   CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.