**STATE of Minnesota, Respondent,**

v.

**Jela DeShaun JONES, Appellant.**

No. CX–01–1431.

Court of Appeals of Minnesota.

July 16, 2002.

Mary M. McMahon, McMahon & Associates Criminal Defense, Ltd., Roseville, for appellant.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, and Douglas J. Christian, Le Sueur County Attorney, Le Center, for respondent.

Considered and decided by WILLIS, P.J., and HARTEN, and SHUMAKER, JJ.

## OPINION

HARTEN, Judge.

Appellant challenges his two convictions of third-degree criminal sexual conduct, arguing that the district court abused its discretion in denying his motion for a change of venue based on the minority status of appellant and his witnesses and the demographics of the county in which the offense occurred. Appellant also argues that the district court abused its discretion in ruling that uncharged Spreigl offenses could be used for impeachment purposes if appellant testified. Appellant also challenges his sentence on Count 2, arguing that the district court violated his right to due process when it imposed a ten-year conditional release term that could make his prison time exceed the statutory maximum. Finally, in his pro se brief, appellant argues, among other things, that there was insufficient evidence to support the verdicts. We affirm the convictions, but remand Count 2 for resentencing in a manner not inconsistent with this opinion.

## FACTS

On 9 August 2000, appellant Jela DeShaun Jones, then age 23, was charged in Le Sueur County with third-degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(b), sexual penetration of a person between 13 and 16 years of age (Count 1); and third-degree criminal sexual conduct for violating Minn.Stat. § 609.344, subd. 1(d), sexual penetration of a person he knew to be physically helpless (Count 2).

The complaint alleged that on 18 July 2000, A.G., then age 17, awoke to find appellant in her bed. A.G. told police that appellant had unbuttoned her pants and inserted his finger into her vagina. Her sister, S.G., then age 15, told police that she, S.G., had had sexual relations with appellant at least 10 times between March and July 2000.

A jury trial was held from 27 to 30 November 2000. After voir dire, appellant, an African–American, moved for a change of venue from Le Sueur County to a county with a higher percentage of racial minority residents. The district court denied appellant's motion. Before its case in chief, the prosecution stated that it intended to question appellant about his previous sexual relationships with girls under the age of 16. Appellant generally objected. The district court decided to allow the evidence, but only if appellant testified. Under the circumstances, appellant elected not to testify.

The jury found appellant guilty on both counts. On Count 2, the district court sentenced appellant to the statutory maximum term, 15 years, as a patterned and predatory sex offender and also ordered 10 years of conditional release following the prison sentence. This appeal followed.

## ISSUES

1. Did the district court abuse its discretion in denying appellant's motion for change of venue to a county with a higher percentage of minority residents?

2. Did the district court abuse its discretion in deciding that, if appellant testified, the prosecution could cross-examine appellant regarding previous sexual relationships with girls under the age of 16?

3. Did the district court unconstitutionally sentence appellant to more than the statutory maximum for third-degree criminal sexual conduct?

4. Was the evidence sufficient to support the verdicts?

## ANALYSIS

### 1. Motion for Change of Venue

A district court may transfer a case to another county "[i]f the court is

satisfied that a fair and impartial trial cannot be had in the county in which the case is pending." Minn. R.Crim. P. 24.03, subd. 1(a). District courts have wide discretion in deciding motions for change of venue and such decisions will be sustained absent a clear abuse of that discretion. *State v. Fratzke*, 354 N.W.2d 402, 406 (Minn.1984). An abuse of discretion occurs where the evidence is such that "a real possibility exists that a jury will not render an unprejudiced or unbiased verdict." *State v. Webber*, 292 N.W.2d 5, 12 (Minn.1980) (quoting *State v. Hogan*, 297 Minn. 430, 437, 212 N.W.2d 664, 669 (1973)).

Appellant argues that the district court abused its discretion and violated his Fourteenth Amendment due process rights because he, an African–American, could not receive a fair trial by an impartial jury in Le Sueur County. *See Groppi v. Wisconsin*, 400 U.S. 505, 509, 91 S.Ct. 490, 492, 27 L.Ed.2d 571 (1971) (due process includes the right to an impartial jury). The jurors who heard this case were all Caucasian except for one alternate juror who was part Korean.

Although Minnesota courts have not addressed whether the denial of a change of venue to a county with a greater percentage of minorities violates a minority defendant's due process rights, other courts have. In *Mallett v. Bowersox*, 160 F.3d 456 (8th Cir.1998), the federal district court moved an African–American defendant's trial from a county with a substantial number of minority residents to a county with no African–American residents. Stating that

a petitioner must show the actual existence of prejudice to prove he was de-

nied the due process guarantee of a fundamentally fair trial[,]

the Eighth Circuit rejected Mallett's claim that the change in venue violated due process. *Id.* at 460. The Eighth Circuit commented that

[t]o hold that prejudice may be inferred simply because the jury included no jurors of Mallett's race—the predictable consequence of drawing a jury from a county without a substantial black population—would amount to a holding that Mallet is entitled to have members of his race on the jury.

*Id.* at 461 (*citing Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (holding that defendants are not entitled to a jury of a particular racial composition)). Similarly, the Supreme Court of Indiana rejected an African–American defendant's argument that he could not receive a fair trial in a county with a small minority population because he had not shown any purposeful discrimination. *James v. State*, 613 N.E.2d 15, 29 (Ind.1993). We agree with the rationale of the Eighth Circuit and the Indiana Supreme Court. Accordingly, we conclude that appellant cannot show a violation of his due process rights without showing actual prejudice.[1]

■ Claiming actual prejudice, appellant points to several statements by prospective jurors during voir dire. Prospective jurors numbers 8, 14, 16, and 18 admitted that appellant's race might affect them; they were all removed for cause. Prospective jurors numbers 6 and 13 made comments that suggested only that they were unfamiliar with minorities, and they both stated that appellant's race would not affect their decisions.

---

1. Minnesota caselaw regarding changes of venue due to pretrial publicity and its effect on a fair hearing also requires that a defen-

dant show actual prejudice. *See State v. Everett*, 472 N.W.2d 864, 866 (Minn.1991).

Appellant also points to prospective juror number 27. When asked if he could be an impartial juror, he replied, "I have some prejudice, prejudgments against what they are going to say, some of them." To clarify, the district court then asked,

Q. Let's say you had a Hispanic witness and you had a Caucasian witness. Are you telling me you are more likely to believe the Caucasian because they are white?

A. No, just some of the acts. I don't know, they tend to say a lot of things that they don't mean.

Q. Do you think they are lying?

A. No, I think they just misunderstand the English and the interpreting * * *.

Prospective juror number 27 seemed concerned with a possible language barrier, not prejudice against minorities. Appellant did not ask that this juror be removed for cause.

Finally, appellant claims that he was prejudiced because several jurors knew one another and some knew an officer connected with the case. Except for one, the prospective jurors to whom appellant objects were excused for cause or removed by a peremptory challenge. The remaining juror had been represented by the prosecutor more than twenty years earlier and doubted that the prosecutor remembered him.

We discern no actual prejudice against appellant on this record. Because appellant has not shown that he suffered actual prejudice resulting from the jury's racial composition, we conclude that the district court did not abuse its discretion in denying his motion for change of venue.

## 2. Evidentiary Ruling

■ Appellate courts largely defer to the district court's evidentiary rulings, which will not be overturned absent a clear abuse of discretion. *State v. Kelly*, 435 N.W.2d 807, 813 (Minn.1989). At the beginning of the trial, the prosecution indicated its intent to question appellant (if he testified) about previous sexual relationships with girls who were under the age of 16. The prosecutor stated:

[I]f [appellant] takes the stand to testify then he leaves himself open for questioning on these other individuals for the purpose * * * of showing * * * intent or his modus operandi with young girls in the past. I believe that * * * does not come under the parameter of the Spreigl case. That is rather an evidentiary issue * * * since the State does not intend to bring these individuals into [sic] testify in its case in chief.

Appellant's attorney responded that these past acts were not relevant because, in pleading not guilty, appellant denied that he had sexual contact with either girl. Appellant's attorney also stated that allowing the inquiry would deny appellant his right to testify in his own defense. The district court decided to allow the evidence during cross-examination of appellant if he took the stand.

■ Under the Minnesota Rules of Evidence,

[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

*(1) Objection.* In case the ruling is one admitting evidence a timely objection or motion to strike appear of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

*(2) Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the

context within which questions were asked.

Minn. R. Evid. 103. The district court's ruling may have functionally amounted to a conditional admission of Spreigl evidence in the guise of impeachment evidence under subdivision (1) above. And because the ruling was without proper Spreigl foundation and would have a chilling effect upon appellant's decision to testify or not testify in his own behalf, it could have constituted prejudicial error. But "we cannot assume district court error." *In re Paternity of B.J.H.*, 573 N.W.2d 99, 102 (Minn.App.1998) (citing *Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949)).

The problem is that we do not know the substance of appellant's contemplated testimony. There was no offer of proof to accommodate our review. The prosecutor asserted that his contemplated cross-examination of appellant would not have generated Spreigl evidence.

There are a number of contexts in which the prosecutor could have cross-examined appellant regarding previous relationships. For example, had appellant testified that he had never had sexual relations with young girls, the prosecutor's proposed inquiry likely would have been proper impeachment under Minn. R. Evid. 608(b), specific instances of conduct used to impeach a witness. *See State v. Lavastida*, 366 N.W.2d 677, 681 (Minn.App.1985) (proper to ask appellant about an earlier incident with a knife when appellant testified that he had never carried a knife). Or the evidence could have been admissible under Minn. R. Evid. 404(a)(1) to rebut a pertinent trait of character had appellant put his character in issue on direct examination.

■ It is unclear what rationale or rule of evidence the district court used to conditionally allow the prosecutor's proposed cross-examination. Appellant argues that the district court abused its discretion by admitting the evidence without going through a Spreigl analysis.[2] Appellant could be right. But appellant did not develop his objection in detail or provide foundation for his objection to the proposed inquiry (notwithstanding that the prosecutor specifically denied Spreigl involvement); the record is inadequate for us to effectively review this issue on appeal. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996) (courts generally do not review issues not raised before the district court). We cannot speculate about how the scope of appellant's testimony on direct examination would have been limited or what appellant would have said. Accordingly, we conclude that the record does not show that the district court abused its discretion in conditionally allowing the prosecutor's proposed cross-examination.

### 3. Sentencing

On count one, the district court sentenced appellant to 28 months' imprisonment and stayed execution. On count two, the district court sentenced appellant to the statutory maximum, 15 years, as a patterned and predatory sex offender pursuant to Minn.Stat. § 609.108. *See* Minn. Stat. § 609.344, subd. 2. Appellant does not contest the district court's finding that he is a patterned sex offender.

**2.** Spreigl evidence is evidence admitted under Minn. R. Evid. 404(b), other crimes, wrongs, or acts. It should not be admitted unless the state gives notice, the state clearly indicates why the evidence is being offered, there is clear and convincing evidence that the defendant participated in the act, the evidence is relevant and material to the state's case, and its probative value is not outweighed by the potential prejudice to the defendant. *State v. Lynch*, 590 N.W.2d 75, 80 (Minn.1999).

■ Appellant initially argues that he should have been sentenced to the presumptive sentence because the district court failed to make an additional finding of aggravating circumstances to justify a departure. But section 609.108 does not require that the court make any additional findings beyond those listed in the statute. And the supreme court has stated that the statute itself is a "statutorily created aggravating factor." *State v. Stirens,* 506 N.W.2d 302, 305 (Minn.1993) (quotation omitted). Accordingly, the district court was not required to find an additional aggravating factor.

■ The district court also added ten years of conditional release under Minn. Stat. § 609.108, subd. 6, to the statutory maximum 15–year sentence. Appellant argues that in adding the conditional release term the district court unconstitutionally sentenced him to more than the maximum sentence for third degree criminal sexual conduct. He relies on a supreme court decision holding that:

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). *Apprendi* was applied to Minnesota's patterned sex offender statute in *State v. Grossman,* 636 N.W.2d 545, 550 (Minn.2001). *Apprendi* does not limit its application to actual incarceration; rather, it applies to any increase in a defendant's "penalty." *Id.* at 551, 120 S.Ct. 2348. Conditional release is an obvious penalty that would allow appellant to invoke *Apprendi. See State v. Calmes,* 632 N.W.2d 641, 649 (Minn.2001) (recognizing that conditional release is aspect of punishment although not an additional punishment in violation of double jeopardy).

But Minn.Stat. § 609.108, subd. 6, states that

[a]t the time of sentencing, * * * the court shall provide that after the offender has completed the sentence imposed, * * *, the commissioner of corrections shall place the offender on conditional release for the remainder of the statutory maximum period, or for ten years, whichever is longer.

Thus the relevant statutes allow for both the maximum sentence and a conditional release period beyond the maximum.

Although the supreme court has not addressed whether a conditional release period can extend a sentence beyond a statutory maximum, it has held, on relative issues, that imposition of a conditional release period beyond the prison time specified in a plea agreement was sufficient grounds to allow a defendant to withdraw a guilty plea. *See, e.g., State v. Jumping Eagle,* 620 N.W.2d 42, 44 (Minn. 2000) (defendant "now faces a sentence that exceeds the upper limit of his court-accepted plea petition, thus violating that agreement"). As in *Jumping Eagle,* appellant's sentence exceeds the statutory maximum when the conditional release term is considered.

Respondent contends that appellant's argument is premature because it is unlikely that appellant will serve any more than his 15–year sentence. The supreme court, however, considered a related issue in *Jumping Eagle,* and held that the beginning of a sentence was the appropriate time to raise the issue. *Id.* at 44. We do not agree with the state that we should defer judgment on whether there is a violation until appellant actually serves prison time beyond the statutory maximum.

■ Conditional release is mandatory and cannot be waived by the sentencing court. *State v. Humes,* 581 N.W.2d 317,

320 (Minn.1998). However, in another parallel case we have held that the duration of conditional release is not mandatory. *State v. Wukawitz,* 644 N.W.2d 852, 856 (Minn.App.2002). We conclude that where application of the conditional release term and the rule forbidding imposition of prison time beyond the statutory maximum are in unresolvable conflict, to avoid unconstitutional application of law, the district court may reduce appellant's conditional release time to less than ten years so that the conditional release time plus the incarceration time do not exceed the statutory maximum of 15 years. Accordingly, we reverse appellant's sentence on Count 2 and remand for resentencing.

### 4. Sufficiency of the Evidence

In considering a claim of insufficient evidence, our review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach their verdict. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *State v. Alton,* 432 N.W.2d 754, 756 (Minn. 1988).

Appellant notes that his convictions rested on S.G.'s and A.G.'s testimony and that their testimony was not supported by physical evidence. But a criminal sexual conduct conviction can rest upon the testimony of a single credible witness. *See* Minn.Stat. § 609.347, subd. 1 (2000). Physical evidence is unnecessary.

Appellant also contends that neither S.G. nor A.G. was a credible witness because they gave inconsistent testimony and were contradicted by other witnesses. On appeal, we must assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn. 1989). Also, we note that appellant does not point to any specific inconsistencies in the victims' testimony.

The record shows that A.G.'s statements to police were consistent with her testimony. S.G.'s testimony differed slightly from what she told police. But these differences concerned peripheral matters. Inconsistencies in the state's evidence are not automatic grounds for reversal. *State v. Robinson,* 604 N.W.2d 355, 366 (Minn. 2000). Moreover, S.G.'s testimony that she and appellant had sex in her father's camper was corroborated by A.G.'s statement that she had seen appellant and S.G. enter the camper late one evening. S.G.'s testimony was also corroborated by a witness who testified that appellant sent him to buy a pregnancy test for S.G.

Appellant makes other evidentiary claims in his pro se brief. We have carefully considered all these evidentiary claims and find them to be without merit. We conclude that there was sufficient evidence to support the verdict.

### DECISION

We affirm appellant's third-degree criminal sexual conduct convictions, but reverse the sentence in Count 2 and remand for resentencing in a manner not inconsistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**